**Rohit PHANSALKAR, Plaintiff,**

v.

**ANDERSEN WEINROTH & CO., L.P., AW & Co., Inc., G. Chris Andersen, Stephen D. Weinroth, Defendants.**

No. 00 Civ. 7872(SAS).

United States District Court, S.D. New York.

Sept. 3, 2002.

See also 2002 WL 1402297.

Andrew J. Rossman, Samidh Guha, Sapna Mirchandani, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, for Plaintiff.

Jaculin Aaron, Daniel Schimmel, Shearman & Sterling, New York City, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

This case is a consolidation of two lawsuits—one suit filed by Andersen Weinroth

& Co., L.P. and its two partners, G. Chris Andersen and Stephen D. Weinroth (collectively "AW" or "the defendants"), against their former employee Rohit Phansalkar, and a second suit filed by Phansalkar against AW. The case was bifurcated for trial purposes. The first phase of the non-jury trial took place in September 2001 and, in November, this Court issued an opinion with respect to that phase of trial. *See Phansalkar v. Andersen Weinroth & Co., L.P.,* No. 00 Civ. 7872, 2001 WL 1524479 (S.D.N.Y. Nov. 29, 2001). The second phase was conducted in April 2002 and, in June, the Court issued an opinion with respect to it. *See Phansalkar v. Andersen Weinroth & Co., L.P.,* No. 00 Civ. 7872, 2002 WL 1402297 (S.D.N.Y. June 26, 2002). Familiarity with those opinions is presumed.

AW has since appealed the judgment against it, and now applies for a stay of enforcement of the judgment on the basis of a supersedeas bond filed on August 19, 2002. If the Court deems that filing ineffective, AW seeks a stay based on a revised supersedeas bond filed on August 30, 2002, and corresponding vacatur of levies that Phansalkar imposed before and after AW's filing of the first supersedeas bond. For the reasons stated below, AW's application is granted and vacatur of the levies is ordered.

## II. BACKGROUND

On June 28, 2002, this Court rendered an opinion and final judgment in this case. The judgment was docketed on July 12, 2002. By letter dated July 26, 2002, Phansalkar sought to correct several undefined terms and a typographical error in the judgment, which the Court resolved in an order dated August 15, 2002. The corrected judgment was docketed on August 23, 2002.

On August 14, 2002, Phansalkar provided writs of execution to the Sheriff of New York County (the "Sheriff"), requesting that the Sheriff serve them on various financial institutions where AW had bank accounts, in order to protect his judgment. On August 19, 2002, seeking to stay execution of the

judgment, AW presented a supersedeas bond to the Clerk of the Court who approved it that morning. *See* 8/23/02 Letter of Jaculin Aaron, defendants' attorney, to the Court ("8/23 AW Ltr.") at 1. Phansalkar contends that the bond was not "approved" until 4:45 p.m. on August 19, *after* the Sheriff had begun to execute the judgment by placing restraining notices on the defendants' accounts at Legg Mason Wood Walker Inc. ("Legg Mason") and the Bank of New York ("BONY").[1] These restraining notices prevented the defendants from selling securities in their bank accounts—to raise the cash they needed to post the bond. In addition, the restraining notices also caused their checks to bounce and prevented the corporate defendants from meeting various operating expenses for their businesses.

Also on August 19, Phansalkar complained that the supersedeas bond filed by the defendants was inadequate because it did not clearly bind the surety company to pay Phansalkar in the event that the appeal was unsuccessful. On August 20, 2002, AW filed a corrected bond. On August 21, 2002, Mr. Rossman told Mr. Schimmel, counsel for AW, that he would ask the Sheriff to "step down" and not take the next step toward executing the judgment, *i.e.* freezing the bank accounts, in deference to defendants' apparently good faith efforts to correct the bond. Unbeknownst to Mr. Rossman, however, the Sheriff had already succeeded in freezing the defendants' accounts at Legg Mason and the Bank of New York two days earlier, on August 19, 2002.

On August 27, it came to the defendants' attention that the Sheriff was in the process of serving the writ of execution on yet another bank account, this time at Credit Suisse First Boston ("CSFB"), despite Mr. Rossman's express request that he step down. That same day, this Court held a teleconference to discuss these restraints and executions. On August 28, 2002, this Court issued an order directing the Sheriff to "stay execution of any restraining notices on accounts of Andersen, Weinroth & Co., AW & Co., G.

---

1. Andrew Rossman, Phansalkar's counsel, made this representation during a teleconference held

on August 29, 2002.

Chris Andersen and Stephen D. Weinroth . . . ." 8/27/02 Order of the Court. The next day, on August 29, 2002, Mr. Rossman informed the Court that the order was in vain because the Sheriff had already succeeded in freezing the bank account at CSFB by the time of the August 27 conference. Mr. Rossman further asserted that the money now belonged to Phansalkar as a judgment creditor.

In the meantime, the parties and the surety company revised the bond in light of Phansalkar's concerns. In the early afternoon of August 30, 2002, defendants hand-delivered a third version of the supersedeas bond. *See* [Second] Corrected Supersedeas Bond, Ex. A to 8/30/02 (1 p.m.) Letter from Aaron to the Court ("8/30 1st AW Ltr.").

## III. DISCUSSION

### A. Rule 62(d) Stay Upon Appeal

Normally, the filing of a Notice of Appeal extinguishes a district court's jurisdiction over a case. "Rule 62(d)[, however,] reserves power in the district court to grant a supersedeas [bond] on a proper application . . . ." *Imperial Commodities Corp. v. S.S. Maria Auxiliadora*, 115 F.R.D. 305, 307 (S.D.N.Y. 1987)(Sand, J.)(quoting *In re Federal Facilities Realty Trust*, 227 F.2d 651, 654 (7th Cir.1955)). *See also Ribbens Int'l, S.A. v. Transport Int'l Pool, Inc.*, 40 F.Supp.2d 1141, 1143 (C.D.Cal.1999)(agreeing with appellant that district court "has jurisdiction to hear and decide this ex parte application for enforcement of the supersedeas bond and stay of execution application despite the fact that a notice of appeal has been filed in this Court").

Rule 62(d) provides that:

(d) Stay Upon Appeal. When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. *The stay is effective when the supersedeas bond is approved by the court.*

Fed.R.Civ.P. 62(d)(emphasis added).

■ While "[a]n appealing party is entitled to a stay of enforcement as a matter of right under Rule 62(d) if a supersedeas bond is filed with the court," such "stay [only] becomes effective once the court has approved the bond." 12 James W. Moore, *Moore's Federal Practice* (3d ed.2001) § 62.03[1]. Here, the parties dispute the meaning of the word "court" in the final sentence of section (d) of the Rule. Phansalkar contends that the word "court" requires that an appellant seeking a stay make an application to a district court judge, who must approve the bond for the stay to take effect. AW argues that the approval of the Clerk of the Court is sufficient, which they obtained in the morning of August 19, 2002, prior to the Sheriff's levying the accounts at Legg Mason or BONY. Thus, defendants argue that these levies are invalid because a stay was in effect.

At first glance, the case law appears to support Phansalkar's contention that Rule 62(d) requires that a federal judge, and not just a clerk, approve the bond to stay execution of judgment. *See, e.g., Imperial Commodities*, 115 F.R.D. at 307 ("district court . . . on a proper application"); *Ribbens Int'l*, 40 F.Supp.2d at 1142–43 (referring to its earlier order approving the appellant's supersedeas bond). In addition, forms for making a motion to a district court for approval of a supersedeas bond are available on Westlaw. *See* 2 Fed. Proc. Forms, L.Ed. § 3:223–24.

Yet, "district court" is nowhere defined to exclude the Clerk of the District Court. In fact, there is every indication that it is the established practice of the United States District Court for the Southern District of New York to vest in the Court Clerk the ministerial duty of approving supersedeas bonds. Defendants attached at the back of the Original Supersedeas Bond a form signed by the Clerk of the Court, reflecting the Clerk's approval of the bond. In following this procedure, AW relied on hornbook authority: "Upon the approval of a supersedeas bond by the clerk of the reviewing court any further action or proceeding under judgment of the

district court [is] stayed pending appeal." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc. Civ.2d* § 2905 n. 7 (2002)(citing *Houston Fire & Cas. Ins. Co. v. Ivens,* 323 F.2d 112, 113 (5th Cir.1963)). I decline to require that henceforth district judges must take on the additional burden of reviewing all such bonds prior to approval.

Of course, the judgment creditor is not without a remedy. A creditor may always challenge the adequacy of the bond before the district court judge. In this case, the Clerk of the Court approved bond language that did not expressly bind the surety company to pay Phansalkar in the event that the defendants' appeal is unsuccessful. After initiating the redrafting process with AW to ensure that more protective language would be incorporated in the bond, Phansalkar brought his challenge to the attention of this Court. The Court observed that the truncated language of the first corrected bond stated only that the surety company, here the Carolina Insurance Company, would be *relieved* of any obligation to pay Phansalkar— in the event that the defendants/appellants paid him first. *See* [First] Corrected Supersedeas Bond, Ex. A to 8/23 AW Ltr. The antecedent "obligation" was nowhere delineated by the bonding company. This Court then held that another bond must be filed to ensure that the surety company was under the express obligation to pay Phansalkar should he prevail on appeal. It is nevertheless clear, from the custom and practice of this District as well as hornbook authority, that a stay was put into effect by the filing and approval by the Clerk of the Court of the Original Supersedeas Bond on August 19, 2002.

**B. Second Corrected Supersedeas Bond**

Phansalkar has argued that the supersedeas bond must "unequivocally oblige[ ] the surety to satisfy the judgment" in the event that AW's appeal is unsuccessful. 8/27/02 Letter from Rossman to the Court, at 1. The third version of the bond, delivered on Au-

gust 30, 2002, does just that. It provides, in pertinent part:

> Now, therefore, Carolina Casualty Insurance Company ... does hereby undertake in the sum of Five Million Four Hundred Four Thousand Five Hundred Seventy Three and 10/100 ($5,404,573.10) dollars and the Carolina Casualty Insurance Company does hereby unconditionally agree to satisfy promptly upon demand by Rohit Phansalkar the full amount of the judgment, as affirmed or modified by the final, nonappealable judgment of a federal court
> . .

[Second] Corrected Supersedeas Bond, Ex. A to 8/30 1st AW Ltr. Thus, the Second Corrected Supersedeas Bond is approved, and the defendants' application for a stay of execution of judgment pursuant to Rule 62(d) is granted.

**C. Retroactivity**

██ Defendants argue that any stay this Court issues should also vacate or extinguish the pre-bond levies served on their bank accounts by the Sheriff at the behest of Phansalkar.[2] The defendants have submitted a proposed order directing the Sheriff to "releas[e]" the "execution notices served with respect to the accounts of [the defendants] . . . ." Proposed Order, attached to 8/29/02 Fax from Daniel Schimmel, defendants' counsel, to the Court. Phansalkar argues that such an order is without legal effect because the approval of a supersedeas bond cannot have retroactive effect. *See* 8/29/02 Letter from Rossman to the Court ("8/29 Phan. Ltr.").

**1. Authority for a Retroactive Stay**

This Court has stated that "the authorities on the effect of a supersedeas bond on a previously obtained levy are not clear." *Imperial Commodities,* 115 F.R.D. at 307. It has been noted elsewhere that "[t]he cases dealing with this issue are in conflict." *Laborers National Pension Fd. v. ANB Investment Mgt. and Trust Co.,* 26 F.Supp.2d 1048,

---

**2.** This issue arises with respect to either the Original Supersedeas Bond or the Second Corrected Supersedeas Bond, because it is unclear at what time in relation to the filing of the

Original Bond the levies were executed on August 19, 2002. That is, the levies may have been placed on the accounts before the filing and approval of the Original Bond.

1051 (N.D.Ill.1998). Courts that have held that a supersedeas bond extinguishes prior levies have stated: "The whole purpose of a supersedeas bond is to secure the appellee's claim while liberating appellant's property from enforcement of the judgment." *Gauthier v. Mardi Capital Corp.*, No. 90 Civ. 4313, 1990 WL 250179, at *1 (S.D.N.Y. Dec. 26, 1990) (Haight, J.)(approving supersedeas bond and vacating all prior restraints). *See also Sheldon v. Munford, Inc.*, 128 F.R.D. 663 (N.D.Ind.1989)(same); *Imperial Commodities*, 115 F.R.D. at 307–08 (holding that a retroactive stay lifting prior restraints could be issued, but declining to do so due to perceived jurisdictional defect). *Gauthier* continued: "There is ample authority for vacatur of a previously obtained restraint upon the filing of an appropriate supersedeas bond." *Gauthier*, 1990 WL 250179, at *1 (citing, as an example, *Ascher v. Gutierrez*, 66 F.R.D. 548 (D.D.C.1975)).[3] Certainly, the only two decisions on this issue from the district courts of this Circuit, *Gauthier* and *Imperial Commodities*, have held that a properly approved supersedeas bond extinguishes prior levies and attachments in aid of execution of a judgment.[4]

### 2. Phansalkar's Arguments

Plaintiff, however, points to another lower court decision stating that "the great weight of recent authority ... supports the ... conclusion that a pre-bond levy is not automatically extinguished by operation of law upon the Court's approval of a Rule 62(d) supersedeas bond." *Ribbens Int'l*, 40 F.Supp.2d at 1145. That court then held that recent cases have established that a supersedeas bond *cannot* operate retroactively to stay execution of a judgment or "extinguish pre-existing liens, levies, attachment or garnishment proceedings." *Id.* at 1144–46. The *Ribbens Int'l* court and Phansalkar both rely on *Laborers National*, 26 F.Supp.2d at 1051 ("Considering the authority on this issue, the Court finds that the filing of a supersedeas bond should not retroactively stay supplementary antecedent proceedings.") and *Larry Santos Productions v. Joss Org., Inc.*, 682 F.Supp. 905, 906 (E.D.Mich.1988) (holding that a stay upon approval of a supersedeas bond could not operate retroactively to dissolve a writ of garnishment).

First, unlike *Gauthier* or *Imperial Commodities*, none of plaintiff's cases is from this District or this Circuit. Second, each is distinguishable on its facts. The appellants in *Ribbens Int'l* waited almost two months from the date of entry of judgment, and after the appellee had served a Notice of Levy on the garnishee, to file a supersedeas bond and move for a stay of execution. *Ribbens Int'l*, 40 F.Supp.2d at 1141–42. Further, *Ribbens Int'l*, in its review of recent authority, ignores the well-reasoned conclusion in favor of retroactive stays articulated in *Gauthier*, 1990 WL 250179, at *1–*2. *Ribbens Int'l*, 40 F.Supp.2d at 1145. In *Larry Santos*, the post-trial proceedings had continued over eight months, and the judgment debtor further delayed the filing of a supersedeas bond. *Larry Santos*, 682 F.Supp. at 906. Similarly, in *Laborers*, the judgment debtor "had not sought a stay for numerous months." *Laborers*, 26 F.Supp.2d at 1049. In no case did the appellant or appellants allege that the levies harmed their legitimate business activities or their credit rating.

Here, by contrast, the judgment was not finally docketed until August 23, 2002 due to Phansalkar's request to amend the judgment, and the Court's subsequent ruling on that request on August 15. In the meantime, the defendants obtained a supersedeas bond and, reasonably relying on Wright & Miller's esteemed treatise, had it approved by the Clerk of the Court. Additional delay in submitting the second corrected bond was caused by Phansalkar's challenges to the bond language. As discussed in more detail below, the defendants have already suffered serious harm, and face further damage, as a result of the levies.

---

**3.** The court in *Ascher*, upon determining that the defendant had posted a satisfactory supersedeas bond, quashed a pre-bond attachment of a bank account. *See Ascher*, 66 F.R.D. at 549.

**4.** If any reviewing court should determine that a retroactive stay cannot be issued, I again note that the bond filed on August 19, 2002 was duly approved by the Clerk of the Court and operated to preclude valid execution efforts upon AW's property.

Phansalkar's argument that the money in the bank accounts belongs to him is also without merit. Phansalkar argues that he is now the owner of the assets in AW's accounts as a result of the levies he placed on them, and therefore a retroactive stay can have no effect on the property. *See* 8/29 Phan. Ltr. at 1 (citing *Suffolk Plumbing Supply Corp. v. Kaider*, 9 Misc.2d 108, 166 N.Y.S.2d 156, 157 (Sup.Ct.` Nassau Cty. 1957)). *Suffolk Plumbing* stated that where a Sheriff collects monies pursuant to a valid execution, the monies "belong to the judgment-creditor." *Suffolk Plumbing,* 166 N.Y.S.2d at 157. In further support of his argument, Phansalkar contends that "[w]here, as here, some or all of the assets are intangible property not capable of delivery, the Sheriff need only serve the execution upon the garnishee (*i.e.,* the third party financial institutions) to complete the levy." 8/29 Phan. Ltr. at 2 (citing N.Y. C.P.L.R. § 5232(a)). Finally, Phansalkar states that all that is left is the "mechanical act of transferring levied property to the Sheriff. . . ." *Id.*

In his zeal, Phansalkar mischaracterizes the statute and the law. *Suffolk Plumbing* involved funds that had already been collected by the Sheriff. Furthermore, far from requiring only a mechanical act of transfer to complete the execution, the restraints placed on AW's accounts will expire within ninety (90) days unless the financial institution in question voluntarily transfers the funds. *See* N.Y. C.P.L.R. § 5232(a); David D. Siegel, " 'Perfecting' the Levy; the 90–day Period," Supplementary Practice Commentaries C5232:3 (2001)(electronic pocket part update 2002). If a given financial institution has not made a voluntary transfer to the Sheriff within that time period, Phansalkar would then be required to take steps to obtain the turnover of the property such as commencement of a special proceeding pursuant to, *e.g.,* N.Y. C.P.L.R. § 5225. *See* Siegel at C5232:3. The Sheriff would then sell any levied personal property, such as the securities in AW's restrained accounts, at a public auction pursuant to section 5233. *See* N.Y. C.P.L.R. § 523; David D. Siegel, "Levy on Personal Property, Generally," Supplementary Practice Commentaries C5232:1 (1997).

In short, neither the case law nor the statute supports the view that the placing of a levy itself confers ownership.

### 3. Prior Levies on AW's Accounts Must Be Vacated

While the case law is clear that a supersedeas bond does not "automatically" effect a retroactive stay nor extinguish a pre-bond levy, the second corrected supersedeas bond here will operate to extinguish any pre-bond levies placed by Phansalkar on the defendants' bank accounts. The defendants, who have diligently sought to file a supersedeas bond over the course of the past six weeks, have suffered the following harm as a result of the restraining notices placed on their accounts: (1) their checks have bounced repeatedly; (2) suppliers including their telephone service provider have threatened to terminate their service to the corporate defendants; (3) the employees of the corporate defendants "express daily concerns regarding AW's ability to pay them"; and (4) "efforts to refinance certain mortgages have failed because lending institutions view G. Chris Andersen as a credit risk, in light of Phansalkar's restraining notices." 8/30/02 Letter from Aaron to the Court ("8/30 2nd AW Ltr.") at 1. In addition, the accounts that Phansalkar has restrained contain securities, which the Sheriff will be required to sell in connection with his execution. *See id.* at 3. "Given that the current value of such securities is significantly depressed, [the] Sheriff's sale will have devastating consequences and will be of no benefit to Phansalkar because he is already protected by a supersedeas bond." *Id.*

There is now a bond in place that unambiguously obligates the surety company to pay Phansalkar in the event and/or to the extent that the appeal is unsuccessful. "Since there has been no showing that the [judgment creditors] will not be able to collect on the bond, they may not continue to disrupt [the debtor's] legitimate business activities with judicial liens." *Sheldon,* 128 F.R.D. at 665. Phansalkar's theory in this case has not only hampered AW's day-to-day operations and jeopardized its credit rating, but would severely undermine AW's right to

an appeal, especially given that "monies coming into the hands of the plaintiff might well be dissipated to the detriment of [the judgment debtors] in the event of reversal ... by the Court of Appeals." *Ascher*, 66 F.R.D. at 549.

## IV. CONCLUSION

The Court will issue forthwith a short order directing the Sheriff to extinguish the restraining notices placed on the defendants' bank accounts, and further directing Credit Suisse First Boston, Legg Mason, JP Morgan Chase, Bear Stearns & Co., and BONY, not to take any action in furtherance of execution upon the defendants' bank accounts at the respective institutions.

SO ORDERED: